IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-166-KS

| | | |
|---|---|---|
| LESLIE CARTER,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security Administration,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

**STATEMENT OF THE CASE**

Plaintiff applied for DIB and SSI on January 26, 2022, with an alleged onset date of January 19, 2026. (R. 26, 234–247.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 26, 108–11, 176–78.) A telephonic hearing was held on September 6, 2023, before Administrative Law Judge

("ALJ") Teresa Hoskins-Hart, who issued an unfavorable ruling on February 14, 2024. (R. 26–48, 50–87.) On February 4, 2025, the Appeals Council denied Plaintiff's request for review. (R. 7–13.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff initiated this action on July 31, 2025, seeking judicial review of the final administrative decision.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (alteration in original) (citation omitted) (first quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and then quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (first and second alterations in original) (quoting *Craig*, 76 F.3d at 589). Rather, in conducting the

"substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2027. (R. 29.) At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since January 19, 2022, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has the following severe impairments: morbid obesity, right rotator cuff dysfunction with partial tear, right lateral epicondylitis, and right carpal tunnel syndrome with history of carpal tunnel release. (*Id.*) The ALJ determined Plaintiff has the following impairments which the ALJ determined to be not severe: sleep apnea; mild allergy with chronic sinusitis; benign essential hypertension; dyslipidemia; type 2 diabetes mellitus; chronic kidney disease; varicose veins; hammer toes; gastroesophageal reflux disease (GERD); recurrent urinary tract infection; cervical and lumbar pain; and depression and anxiety. (R. 29–34.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 34.) The ALJ expressly considered Listings 1.18, 11.14, and SSR 19–2p in connection with Plaintiff's obesity. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (can lift or carry up to 20 pounds occasionally, 10 pounds frequently, can sit, stand, or walk at least 6 hours in workday) except: she can perform only occasional postural movements but never climb ladders, ropes, and scaffolds; she can frequently but not continuously use the dominant right upper extremity to reach, handle, finger and feel; and she must avoid all exposure to hazards.

(R. 35.) In making this assessment, the ALJ stated she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's and third-party statements about Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence." (R. 35–36.) At step four, the ALJ concluded Plaintiff is able to perform past relevant work as a retail customer service representative, grocery checker, head cashier I, retail store assistant manager, and front desk receptionist. (R. 41.) The ALJ concluded that Plaintiff has not been disabled under the Act from January 19, 2022, through the date of the decision. (*Id.*)

## IV. Plaintiff's Arguments

Plaintiff makes the following arguments: (A) the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to take into account the limiting effects of Plaintiff's chronic cervical and lumbar pain (Pl.'s Br. [DE #18] at 8–19); and (B) the ALJ's step four finding is contrary to law because the ALJ included no mental limitations in the RFC and yet found Plaintiff capable of performing past relevant work that includes skilled jobs (*id.* at 19–25; Pl.'s Reply [DE #21] at 1–5).

### A. RFC

Plaintiff argues ALJ Hoskins-Hart (1) improperly assessed Plaintiff's cervical and lumbar impairments at step two and in the RFC, and (2) improperly discounted the medical opinion of Dr. Andrew Norris. The undersigned agrees with Plaintiff.

At step two of the sequential evaluation process, the ALJ must determine whether a claimant' s impairment(s), individually or in combination, are "severe." 20 C.F.R. §§ 404.1523, 416.923. A "severe" impairment within the meaning of the regulations is one that "significantly limits . . . [a claimant' s] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1522(b), 416.922(b) (explaining basic work activities). Conversely, an impairment is not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." SSR 85–28, 1985 WL 56856, at *3 (Nov. 15, 1985); *see also Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir. 1984). The claimant has the burden of demonstrating the severity of his impairments. *Pass*, 65 F.3d at 1203. So long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 416.923; *see also* SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996). Courts have found that an ALJ' s failure to find a particular impairment severe at step two does not constitute reversible error where

the ALJ determines that a claimant has other severe impairments and proceeds to evaluate all the impairments at the succeeding steps in the evaluation. *See Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (agreeing with various circuit and district courts that "it is not reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation *provided the ALJ considers that impairment in subsequent steps*" (emphasis added)) (citing, *inter alia*, *Hill v. Astrue,* 289 F. App' x 289, 292 (10th Cir. 2008), and *Maziarz v. Sec' y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see also McClain v. Colvin*, No. 1:12-CV-1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014).

Similarly, an ALJ's failure to determine whether a diagnosis is a medically determinable impairment is harmless so long as there is no associated functional loss. *See Crooks v. O'Malley,* No. 5:22-CV-401-BM, 2024 WL 3649602, at *6 (E.D.N.C. Mar. 29, 2024) (finding ALJ's failure to mention a diagnosis in plaintiff's records harmless error because "the record, including [p]laintiff's testimony, does not indicate any functional loss resulting from this condition"). However, "courts have found the step two analysis inadequate where an ALJ fails to evaluate diagnosed impairments and consider their impact on a claimant's ability to perform basic work activities." *Scarborough v. O'Malley*, No. 5:24-CV-00232-D, 2024 WL 5321347, at *5 (E.D.N.C. Nov. 7, 2024), *M. & R. adopted sub nom. Scarborough v. Colvin*, 2025 WL 85220 (E.D.N.C. Jan. 13, 2025).

1. Non-Severe Impairments and RFC

At step two, ALJ Hoskins-Hart determined Plaintiff's lower back pain, specifically her "cervical and lumbar pain," is a nonsevere impairment. In making this determination, she provided no discussion of Plaintiff's related, diagnosed conditions of Chronic Pain Syndrome ("CPS") and Chronic Regional Pain Syndrome ("CRPS"). (Pl.'s Br. at 14–15; R. 749, 1927, 1941 (1/10/23 notes from Dr. Joel Robert Pieper, MD, indicating CPS and CRPS diagnoses).) This aspect of the ALJ's decision is not necessarily harmful. *See Jones*, 2009 WL 455414, at *2. However, the court cannot discern how the ALJ considered the functional impact of Plaintiff's pain (and related diagnoses of CPS and CRPS) in making the RFC assessment.

There is evidence in the record that Plaintiff's CPS and CRPS could have an "impact on [Plaintiff's] ability to perform basic work activities." *Scarborough*, 2024 WL 5321347, at *5. Plaintiff submitted written function reports alleging she is "in pain all of the time" and she "can't stand or walk long periods of time" due to pain. (R. 304–11.) Numerous medical professionals have documented the impact of Plaintiff's chronic pain on her ability to perform daily activities. (R. 399–400 (12/3/2021 treatment note by physician assistant documenting Plaintiff's pain "symptoms are now affecting her normal daily activities"), 473–75 (3/2/2022 assessment plan by physical therapist documenting Plaintiff "is in severe pain today . . .[and] not able to complete any of her usual tasks"), 744 (1/10/2023 physical therapy note indicating "[Plaintiff] clinically presents with severe limitations within [active range of motion] of neck and [bilateral] shoulders"), 1923 (Dr. Pieper's functional

assessment of Plaintiff when diagnosed with CRPS).)[1] It is unclear how the ALJ reconciled this evidence with the RFC findings. *See* SSR 96–8p, 1996 WL 374184, at *7; *Dowling*, 986 F.3d at 388–89.

The Commissioner's argument that the "careful RFC" was based on "Plaintiff's overall treatment history, the diagnostic and clinical findings of record," and "severe and non-severe impairments" is not persuasive. (Comm'r's Br. at 11.) As explained above, there is record evidence pertaining to diagnoses which appear relevant to Plaintiff's functioning. But ALJ Hoskins-Hart did not discuss this evidence, nor did she explain how she reached RFC findings that appear inconsistent with this evidence.

The court cannot determine whether ALJ Hoskins-Hart assessed the total limiting effects of Plaintiff's impairments when assessing the RFC because ALJ Hoskins-Hart provided no assessment of CPS or CRPS, despite record evidence indicating an impact on Plaintiff's daily activities, and did not explain how she reached RFC findings about contested functions. Accordingly, remand is necessary.

2. Medical Opinion Evaluation

Plaintiff's primary care physician opined Plaintiff's functional abilities are significantly more limited than the RFC assessment. (*Compare* R. 1467–69 (Dr. Norris' medical opinion) *with* R. 35 (RFC assessment).) ALJ Hoskins-Hart explained

[1] The record is replete with references to Plaintiff's CPS (R. 735–38, 749 (primary diagnosis), 757–60 (primary diagnosis), 1408, 1425–26, 1880, 1891, 1898–99, 1903, 1905, 1908–10, 1930 (primary diagnosis), 1938–41) and Plaintiff's CRPS (R. 115, 125, 728, 732, 739, 742, 747–48, 1870, 1873, 1878, 1882, 1885, 1893, 1896, 1911–12, 1915, 1918–19, 1921, 1926–27).

that she found Dr. Norris' opinion "generally unpersuasive" for reasons related to Plaintiff's improvement after carpal tunnel surgery. (R. 40.) There are several problems with the ALJ's evaluation of this medical opinion.

When evaluating medical opinions, the ALJ must consider factors set forth in 20 C.F.R. §§ 404.1520c(b), (c)(1)–(5); 416.920c(b), (c)(1)–(5). *See generally Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (summarizing the medical opinion evaluation process for disability claims filed after March 27, 2017). "The ALJ is not required to explain how she considered each of the relevant factors; instead, when articulating her finding about whether an opinion is persuasive, the ALJ need only explain how she considered 'the most important factors' of supportability and consistency." *Corbin v. Kijakazi*, No. 2:20-CV-60-M, 2022 WL 990487, at *2 (E.D.N.C. Mar. 31, 2022). "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider' s opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes*, 70 F.4th at 212. Generally, the ALJ must explain how the evidence led to her conclusions. *Arakas*, 983 F.3d at 95; *Mascio*, 780 F.3d at 637.

As to the consistency factor, ALJ Hoskins-Hart found Dr. Norris' opinion

> inconsistent because [Plaintiff] was well healed at hand surgery follow up, but there was incisional tenderness, and she was able to make a full fist, despite having decreased sensation over median nerve [(R. 830)]. It was noted that she was doing well, and her sutures were removed [(R. 830)]. According to [Plaintiff], she also had difficulty holding things in her right hand. She cannot hold, push, or pull with the right hand [(R. 1357)]. However, she reports driving herself to appointments at times [(R. 1404)]. She also endorsed cooking for herself [(R. 1404)].

> According to Dr. Andrew Norris, she reported significant improvement due to carpal tunnel surgery [(R.1468)].

(R. 40.) ALJ Hoskins-Hart mischaracterized Plaintiff's hand surgery follow-up because the medical report states Plaintiff's "[w]ound [was] well healed," (R. 830), not "the [Plaintiff] was well healed," (R. 40 (citing R. 830)). It is unclear how this routine post-operation examination was consistent or inconsistent with Dr. Norris' medical opinion. Moreover, ALJ Hoskins-Hart credits Plaintiff's reports of occasional driving or cooking but omits Plaintiff's reports—from the same record—of limitations due to her lower back pain, such as only walking or standing for 20 minutes, only sitting for 30 minutes, and that household chores are "particularly difficult." (R. 1404.) Finally, Dr. Norris did not state that Plaintiff "reported significant improvement due to carpal tunnel surgery." (R. 40 (citing R. 1468).) Dr. Norris' statement, albeit handwritten, reads that Plaintiff "reports significant *impairment* due to carpal tunnel syndrome." (R. 1468 (emphasis added).) Dr. Norris provided this handwritten, explanatory note in support of his functional assessment that Plaintiff is unable to perform fine motor movements with her upper extremities. (*Id.*) The ALJ's statement in this regard is a gross mischaracterization of the evidence.

As to the supportability factor, ALJ Hoskins-Hart merely states that Dr. Norris' "opinion is unsupported by Dr. Norris' findings" and cites a single treatment note indicating "normal gait and station and normal range of motion of all major joints and muscles." (R. 40 (citing R. 1350).) However, ALJ Hoskins-Hart fails to explain how this singular documentation of "normal gait and station and normal range of motion" does not support Dr. Norris' opinion about Plaintiff's functional

abilities, which addresses multiple functional domains. (R. 1468.) This lack of explanation frustrates meaningful review.

B. Past Relevant Work

Plaintiff next argues that the ALJ's step-four finding is contrary to law because the ALJ found Plaintiff capable of performing past relevant work that includes skilled jobs without assessing the effect of Plaintiff's mental impairments on her RFC. (Pl.'s Br. at 19-25; Pl.'s Reply Br. at 1-5.) Given that remand is necessary due to the ALJ's deficient RFC explanation, the court declines to address this argument as it can be appropriately addressed on remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

This 29th day of September 2026.

KIMBERLY A. SWANK
United States Magistrate Judge